Thank you your honor and good morning and may it please the court my name is Andrew Koenig for plaintiff's appellant Yolanda Martinez and I would ask for two minutes to be reserved for rebuttal. Your honor, your honors as is noted in the motion for judicial notice that was unopposed by by opposing counsel my client was found disabled in a subsequent decision by an ALJ dated September 11 2019 finding her disabled as of December 14 2017 which is basically exactly a week after we filed the federal court claim I often advise clients to reapply as a backup plan and her her administrative counsel did the ultimately was found disabled back to December 14th of 2017 and what's significant in that is there was a single limitation non-exertional non-exertional limitations the subsequent RFC finding of unable to do low stress work that was the single limitation the vocational expert said if that was the case there would be no jobs that my client could perform that was a title 16 only case and so she was only eligible for disability benefits based on her date of application that finding of unable to do low stress work is consistently documented in the record that we have at issue here from her prior alleged onset date of January 1st of 13 through the date of that decision and this is the prior decision it is significant that it is a combination title 2 title 16 case and there's a date last insured of September 30th of 2015 for title 2 eligibility which obviously is very very important to my client to obtain and in that entire period of 2013 her alleged onset date through the termination of the Commissioner her doctors document that she is unable to do even low stress jobs the ALJ and are just in our case did find her capable of low stress job and that is contrary to the evidence for treating psychiatrist dr. Guzman who treated her 17 times in a you know three plus year period between April 14th and June 17th just prior to the hearing found her unable to perform any type of work due to stress totally incapable of dealing with any type of job stress her treatment so with respect to dr. Guzman's testimony the ALJ discounted it because it was inconsistent with her activities of well I think it's it's twofold number one that the activities of daily living are not preclusive of a disability finding they were basic general activity levels and I believe the garrison case vertigin case this case this this these issues have been routinely found to not be indicative of activity data activities that that you know preclude a finding that someone is disabled and second it is important to put these into context she does did say she was only able to do these on certain times certain days when her symptoms were lessened and in the revels case that I cited the court said a judge ALJ must take those that context into consideration and it's not appropriate to reject credibility of either a doctor or claimant's testimony based on daily activities when only able to do under certain circumstances or under certain limitations. Dr. Guzman finds no stress for treating therapists Dr. Sullivan found her unable to do any work stress and what's very very significant is Dr. DiGiaro the consultant of exam the most significant findings he gave in September of 2012 was that she was severely impaired in ability to do to handle work stress that isn't and that was credited by the ALJ but he translated that into capable of low stress work which is not supported by any other treat treating or examining doctor the only doctors that might support that are the non-examining physicians which if they're contradicted in their opinions are unsupported by the remainder of the record is not substantial evidence to support the ROC finding that this judge gave that she's capable of low stress work. May I clarify one other thing there was no evidence of malingering in this record correct? No the ALJ did not find any evidence of opposing counsel made a point to accuse her of exaggerating symptoms throughout the record but that was trumped up it is not something that the judge found or based any decisions on and under the stout and other cases I cited in my brief you know the court is restricted to relying on the findings actually articulated by the ALJ not speculation or post hoc rationalizations made by counsel and argument so this is a the record is rather consistent and linear with my clients mental conditions this isn't something where she deteriorated in 2017 the records are consistent throughout multiple treating doctors have documented these the severity of symptoms as far as she's the record is replete with her cutting herself when under stress and if she's placed in a work place that is the stress would that would trigger those types of symptoms it's the record is absolutely consistent that if she was placed in work stress situations these types of symptoms would flare one other point I think is a significant is there was absolutely no physical RFC limitations despite clear evidence of headache that dr. Finzi her treating doctor of 22 times did say they were stress related or mentally related and you know she even had to go to a neurologist who who recommended Botox treatment to treat her chronic migraine headache that there is a very very low step to threshold for for physical impairments this judge found no impairments whatsoever and then resulting no physical limitations at all with her headache so it are very very well documented throughout the record and I understand you know mental effects physical physical effects mental in in a whole person but to ignore the fact that her mental stress etc triggers debilitating headaches where she needs Botox treatment to treat is clearly an no physical RFC limitations your honor and if I can I'll reserve the remaining for rebuttal all right let's hear from mr. Talbert yes good morning your honors may it please the court Daniel Talbert for the Commissioner of Social Security the ALJ in this case considered various impairments from many different medical sources as well as statements from the claimant and other individuals and he he relied primarily on opinions from seven different medical sources to conclude that the claimant had significant impairments and limitations but that she remained capable of performing a range of simple routine low stress work this highly restrictive residual functional capacity finding reasonably accommodated the claimant's symptoms and limitations we submit that substantial evidence supports the ALJ's findings and this court should affirm on that basis the the ALJ considered in addition to the medical opinions that he relied upon he considered of course the claimants subjective symptom allegations but he found them to be inconsistent with the record and he relied on numerous factors from the regulations in this court's case law he found various specific inconsistencies including inconsistencies with examination findings and and imaging he found concerns with with non-compliance with prescribed treatment as well as sometimes apparent overuse or even potentially drug-seeking behavior sort of suspicious reasons for seeking early refills of prescriptions and then also some inconsistent presentations when the claimant alleged the need for significant intervention inpatient treatment or hospitalizations which she in fact didn't actually require and the treating providers said wasn't necessary based on normal examination findings he found various other inconsistencies between her statements and the records but bottom line is that the ALJ made a number of specific findings and evaluated the claimants symptoms evaluated them based on what the record showed based on the factors he was required to consider and although the claimant offers another plausible interpretation of the record a different reading that the fact finder could have reached the ALJ made reasonable and for those reasons we asked the court to affirm the ALJ's well-supported findings and decision I'm happy to address any questions that the panel might have I realize there's a number of different issues and points that are here I think it's fair a lot of it is fairly well fleshed out in the briefing so I'm prepared to submit on the briefing if the court does not specific questions I have a question for you my concern with the ALJ decision was primarily did it seem to me that that he had given precedence or priority to non-treating doctors use over those of the treating doctor I thought our law was pretty clear that there's a significant burden for the ALJ to bypass treating doctors opinions in favor of opinions of examining doctor even just a reviewing doctor so how would you address that yes your honor thank you so for cases like this one where the application was filed before March 2017 there is sort of that tree that source hierarchy and kind of the treating source rule that establishes that but ordinarily and in many cases there's going to the ALJ is going to give deference to what treating sources said as opposed to non-treating sources and for that reason this court's case law and the Commissioner's regulations say that if the ALJ doesn't give the greatest weight to the treating source opinions he needs to give in the Commissioner's words good reasons in this court's words specific and legitimate reasons and they have to be supported by substantial evidence our position is that the ALJ met that burden and satisfied that requirement based on his findings and these are on pages 30 and 31 of the supplemental excerpts of record when he's evaluating dr. Fenzi's opinion and dr. Guzman's letter so are essentially the ALJ rejects them starting with dr. Fenzi he rejects that opinion because it is inconsistent because it's inconsistent with the record including the claimants activities including also the claimants non-compliance with treatment which is for both the seizure disorder that dr. Fenzi opines about and the consistent with some of the claimants just general conduct the ALJ sort of worded this as quest for benefits which is admittedly a somewhat unusual wording but that gets back to his point about the claimants making present up the kind of presenting as if she needed significant intervention as if she needed no hospitalization to be admitted to the emergency room but that wasn't really necessary so the ALJ is rejecting dr. Fenzi's opinion because he's saying well these allegations of disabling symptoms are not consistent with her ability to engage in various activities they're not consistent with the record which shows that that she's not actually taking the medications for these supposedly disabling symptoms on a consistent and as prescribed basis and there's other reasons to question the the extent of the limitations that she's alleging and reporting to the doctors with respect to dr. Guzman the ALJ notes first of all that dr. Guzman's letter doesn't really talk about specific limitations or abilities it's focused more on saying oh she just can't do any work but under the regulations and indeed this court's case law specifically McLeod versus Astru a statement from a doctor that a claimant just can't work isn't really entitled to any special weight so we would actually submit that for that letter that treating source rule doesn't really even apply I think the regulations are fairly fairly clear on that as well we cite them in our in our answering brief to address that point but beyond that sort of initial point for dr. Guzman the ALJ rejects dr. Guzman's opinion because he says it's again inconsistent with the claimants level of activity and I'll talk about that just a little bit this isn't one of the cases there's let me step back there's two different ways that an ALJ could consider activities of daily living to reject symptom testimony or maybe a doctor's opinion and one is as this court has noted if those activities seem to translate to a sort of work setting the other one is if they're inconsistent with the specific level of symptom or level of limitation reported and this is the second category this is a case where dr. Guzman wrote in his letter the claimant was homebound she couldn't take care of herself she basically couldn't do any sort of activities and ALJ says well that's not consistent with the record which shows that she's able to go out to shop she can drive herself she can be trusted to take care of her nephew she's able to interact with with her family she plays with her nephew regularly she she's also able to live with family at times and then at other times she could live on her own which is inconsistent with a claim that she's basically dependent entirely on other people so really it's a case where dr. Guzman and the claimant herself and her own testimony has alleged very very significant limitations and restrictions but the ALJ is saying well based on this record I don't find that supported and I don't find it consistent so our position is that the ALJ made those requisites specific and legitimate reasons or good reasons as our regulations would put it supported by substantial evidence for why he disagreed with what the treating sources had to say and agreed instead with the the seven different sources who were the the various examining sources and the non-examining sources who reviewed the records council I just have one question I'm a little unclear about impact of that second ALJ decision that granted disability what's your view it doesn't affect this appeal and so in what way yes judge Donato our position is that it does not affect this case and the real the basic reason for that is that the subsequent decision considers a completely different period of time it considers as mr. Koenig noted the period from December 2017 through I think he said it was I think it was September 2019 the date of the decision the decision we have here is through July 2016 so it's that subsequent decision isn't looking at the claimant status for another 15 months so it's based I'm sorry I may have misunderstood I thought the second decision declared her disabled as a December Oh 2017 okay all right I misunderstood all right right so they're different they're different periods of time I would note that I mean not to bog this down or name other concerns or anything like that but I mean this this court has considered in certain other cases that when there's an ALJ decision that says the claimant became disabled you know the day after the decision under review that's kind of confusing and there are times when you need to look to send the case back on that basis because it could be irreconcilable but in a case like this where there's completely different periods of time you know more than a see on that record that there could be worsening of a condition there's new evidence there's new things considered our position is that that subsequent decision doesn't affect this decision at all it's it's it's it's just it's a different ALJ it's a different time period it's it's actually based on different law too because in March 2017 the regulations changed considerably so for all those various reasons the subsequent decision is is not really material evidence to this case and doesn't provide any basis to remand all right thank you counsel thank you your honors mr. Koenig thank you your honor and I'll try to get all these points the first point is regarding the last I I'll do respect but I think it's rather disingenuous to claim that the second application has nothing to do with it because it's 13 or 16 months later you're precluded from ring applying while the case is still at the Appeals Council level as soon as the Appeals Council denied she was opened up to reapplying for SSI the judges cannot go back prior to the date of application to adjudicate anything so he found her disabled as of the first day he possibly could and she was precluded from applying before that so it's rather disingenuous to say it has nothing to do with the prior period second the period all the way back to 2012 the mental evidence is clear that this is not something that she has deteriorated over time it's been consistent third my opposing counsel says seven doctors supported this six are non-examining doctors and the judge schools point the only one that was examining was judge there was dr. DiGiaro the consultative examiner and that actually supports the claim of dr. DiGiaro and then improperly translated her opinions into the RFC finding there's nothing to do with missing work or work you know interruptions from psychologically based symptoms both of which were moderate and then obviously the severe stress limitation none of that was accurately reflected in the RFC finding so the only doctors that support the RFC finding are not non-examining doctors their opinions are consistent inconsistent with the remainder of the record finally if you look at the inconsistencies so to speak of daily activity she drove herself home from the emergency room the judge said oh you drove she was looking for work on Craigslist he said you were looking for work and she said I know I was cruising Craigslist but I couldn't do it so those are not inconsistent statements he took them out of context and I would ask for a remand for payment on benefits but if not I would ask the your honors to limit the scope of review to the period of January of 13 through December of 17 so she is not put in the untenable position on remand of having to risk a subsequent approval because some judges hang that over people's heads and say well look everything's back over on on the table as far as review so please limit review if it is a remand for further proceedings but I would ask for record of consistence all the way through the date of allegation of disability to now thank you your honor all right thank you very much counsel Martinez V. Saul is submitted and this session of the court is adjourned for today thank you
judges: Wardlaw, Gould, Donato